IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CRYSTAL TENNESSEE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-26-1226 |
| HII MISSION TECHNOLOGIES CORP.,[1] | * | |
| | * | |
| Defendant. | | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant HII Mission Technologies Corporation's ("HII") Motion to Dismiss (ECF No. 22). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant the Motion.

## I. BACKGROUND

### A. Factual Background[2]

Plaintiff Crystal Tennessee is an African American woman who began working as an "Analyst, Lead" at Defendant HII's Centers for Medicare and Medicaid Services ("CMS") in March 2025. (Am. Compl. ¶ 7, ECF No. 19). Around July 30, 2025, HII posted an open requisition for the position of Site Lead (Manager Project Management 3) (the

---

[1] Mission Technologies is an indirect subsidiary of Huntington Ingalls Industries, Inc. ("HII") and not a standalone corporation.

[2] Unless otherwise noted, the Court takes the following facts from Plaintiff's Amended Complaint (ECF No. 19) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

"Site Lead position"). (Site Lead Position Description at 2, ECF No. 22-2;[3] Am. Compl. ¶ 8).[4] Tennessee alleges that she "was qualified" for the Site Lead position and applied for it because the "position would have been a promotion, with an increase in pay, responsibilities and career opportunities." (Am. Compl. ¶¶ 8–9).

After Tennessee applied for the Site Lead position, David Nosel, another HII employee who is a white male, holds a position similar to Tennessee at HII, and "was scheduled to be on the interview panel" for the Site Lead position "stated that if [Tennessee] got the position, he would quit." (Id. ¶ 10). In addition, Al Hunt, another white male who is HII's Portfolio Manager and Tennessee's "2nd level manager" told her and other HII employees that "he wanted to hire a white male for the position." (Id. ¶ 11).[5]

---

[3] Although a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), it may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Here, the exhibits attached to the Motion contain job descriptions for the positions at issue in the case and are thus integral to the allegations in the Amended Complaint. (See generally Site Lead Position Description, ECF No. 22-2; On-Site Operations Lead Position Description, ECF No. 22-3). There is also no dispute as to the authenticity of the exhibits. Therefore, the Court will consider these exhibits in its analysis.

[4] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[5] HII disputes that Hunt verbatim stated that he "wanted to hire a white male for the position" based on the lack of quotation marks in the allegations. Instead, HII asserts that Tennessee's allegation is "plausibly read to mean that Hunt wanted to hire a particular person who happened to be a white male, and not Hunt literally telling [Tennessee] 'I want to hire a white male.'" (Mem. L. Supp. Defs.' Mot. Dismiss Am. Compl. at 4 n.5, ECF No. 22-1). These, however, are disputes of fact which cannot be resolved at the motion to dismiss stage where the Court is obligated to accept as true Tennessee's factual allegations and draw all reasonable inferences in her favor. See Byers v. Painter, 173 F.4th 155, 158

On or about August 8, 2025, HII removed the open requisition for the Site Lead position and replaced it with an open requisition for the position of On-Site Operations Lead (Intelligence Analyst 5) (the "On-Site Operations Lead position"). (Id. ¶ 12; On-Site Operations Lead Position Description at 2, ECF No. 22-3). The requisition for the On-Site Operations Lead position listed a higher anticipated salary range and different required and preferred qualifications than the requisition for the Site Lead position, including a preference for "[p]rior senior military leadership." (Compare Site Lead Position Description at 2, with On-Site Operations Lead Position Description at 2;[6] see Am. Compl.

(4th Cir. 2026) (citing Doriety v. Sletten, 109 F.4th 670, 679 (4th Cir. 2024)). Accordingly, at this stage, the Court's analysis in assessing the validity of Tennessee's claim will proceed with the assumption that Hunt told Tennessee that "he wanted to hire a white male for the position."

[6] The anticipated salary range for the Site Lead position was "$116,437 - $170,000." (See Site Lead Position Description at 2). The required qualifications for the Site Lead position were listed as "8 years of relevant experience with bachelor's in related field; or 6 years relevant experience with master's in related field; or High School diploma or equivalent and 12 years of relevant experience," "[o]ver 5 years of experience in one of the following: DCI, Insider Threat, [or] Supply Chain Risk Management," "[a]bility to analyze threat data and present solutions to complex problems," "5 years of [r]ecent experience (within last 5 years) directing and managing teams and task plans related to analysis products," and an "[a]ctive TS/SCI clearance." (Id. at 3). Preferred qualifications for the Site Lead position were listed as "[o]ver 8 years of experience in all of the following: DCI, Insider Threat, Supply Chain Risk Management and CFIUS," and "CMS experience."

In contrast, the anticipated salary range for the On-Site Operations Lead position was "$122,610 - $170,000," (see On-Site Operations Lead Position Description at 2), and the required qualifications were "15 years of relevant experience with a bachelor's in related field, 13 years of relevant experience with a master's in related field; 10 years of relevant experience with PhD or Juris Doctorate in related field; or High School Diploma or equivalent and 19 years of relevant experience," "10 years of senior level leadership managing large organizations," "[a]bility to analyze threat data and present solutions to complex problems," and an "active TS/SCI" clearance. (On-Site Operations Lead Position Description at 3). The preferred qualifications for this position were listed as "[p]rior senior military leadership," "[m]astery of Microsoft Suite products," "[f]amiliarity with AI tools

¶ 14). According to Tennessee, prior military experience "is not needed to perform" the On-Site Operations Lead Position. (Am. Compl. ¶ 14). Notwithstanding the above-mentioned differences in the requisitions for both the positions, the job descriptions for both positions, as stated in the requisitions, appear to be otherwise identical. (Compare Site Lead Position Description at 2–3, with On-Site Operations Lead Position Description at 2–3).

According to Tennessee, HII "specifically crafted" "[t]he change in job requirements," including the addition of a preference for prior military experience, "to deny [her] the opportunity for a promotion and to attract white, male candidates" in accordance with Hunt's "stated . . . preference." (Id. ¶ 15). Tennessee notes that both Nosel and Hunt "had prior military experience," whereas she does not. (Id. ¶ 13). Tennessee further alleges that although she "met all of the requirements for the" On-Site Operations Lead position, she "did not apply because the hiring manager[]," Hunt, "had already stated that [he] wanted to hire a white male for the position."[7] (See Am. Compl. ¶ 19). Tennessee maintains that she felt "discouraged from applying to the" On-Site Operations Lead position because of Nosel's prior statement and Hunt's expressed preference for hiring a white male, from which she understood "that she would not be hired for the promotion . . . based on her race and gender." (Id. ¶ 16).

---

and products," "CMS experience," and "[c]ounterintelligence, Insider Threat, or Supply Chain Risk Management experience." (Id.).

[7] There appears to be an internal contradiction in the Amended Complaint. Tennessee first alleges that only Hunt stated that he "wanted to hire a white male for the position," (see Am. Compl. ¶ 11), but then alleges that both Nosel and Hunt expressed a preference for hiring a white male for the position, (see id. ¶¶ 17, 19).

**B. Procedural History**

Tennessee initiated the instant lawsuit against HII on March 26, 2026, (ECF No. 1), after receiving a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC") on February 24, 2026, (Am. Compl. ¶ 22). On May 14, 2026, HII moved to dismiss the Complaint. (ECF No. 17). Tennessee then filed an Amended Complaint on May 28, 2026, alleging gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII") and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't §§ 20-601 et seq. ("MFEPA") (Count I) and race discrimination under Title VII and MFEPA (Count II).[8] (Am. Compl. at 3–5). On June 25, 2026, HII filed a Motion to Dismiss the Amended Complaint. (ECF No. 22). Tennessee opposed HII's Motion to Dismiss on July 16, 2026, (ECF No. 25), and HII filed its Reply (ECF No. 28) on August 4, 2026.

## II. DISCUSSION

**A. Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

[8] Like its federal analogue, MFEPA "prohibits discriminatory employment practices based on an individual's protected characteristics, including one's sex or [race]." McGinnis v. Plamondon Enters., Inc., BAH-25-2138, 2026 WL 221694, at *3 (D.Md. Jan. 28, 2026) (citation modified). Because MFEPA is "modeled on federal anti-discrimination legislation," Doe v. Catholic Relief Servs., 300 A.3d 116, 126 (Md. 2023), courts "largely apply federal precedent to employment discrimination claims brought under MFEPA" unless "the MFEPA materially departs from the language of" federal anti-discrimination statutes such as Title VII. Watrous v. AIRtec, Inc., No. TJS-24-2076, 2025 WL 2494324, at *10 (D.Md. Aug. 28, 2025). Accordingly, the Court's analysis of Tennessee's claims brought under Title VII will also apply to her MFEPA claims.

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. See Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, including any documents attached or incorporated into the complaint, consider the factual allegations alleged therein as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979) (finding dismissal of complaint

proper because plaintiffs' "conclusory allegations" of discrimination were unsupported by "reference to particular acts, practices, or policies"), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B. Analysis**

Title VII of the Civil Rights Act prohibits status-based discrimination in the workplace based on an employee's protected characteristics such as "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 346–47 (2013); Strothers v. City of Laurel, 895 F.3d 317, 326–27 (4th Cir. 2018). To plead a discriminatory failure-to-promote claim, a plaintiff must either put forth direct evidence of the employer's discriminatory motive or proceed via the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Haynes v. Waste Connections, Inc., 922 F.3d 219, 223 (4th Cir. 2019).

Here, Tennessee appears to proceed under the McDonnell Douglas framework, (see generally Am. Compl. (alleging no direct evidence of discriminatory motive in posting the On-Site Operations Lead position)); accordingly, she must establish that: (1) she is a member of a protected class; (2) she applied for the position in question; (3) she was qualified for the position; and (4) HII failed to promote her under circumstances giving rise to an inference of unlawful discrimination based on her gender and race. See Walton v. Harker, 33 F.4th 165, 176 (4th Cir. 2022).

As an African American woman, Tennessee is a member of two protected classes. Yet, because Tennessee fails to adequately plead facts from which this Court may infer

that she was qualified for the promotion in question, her Amended Complaint must be dismissed on both counts.

**1. Qualifications**

A plaintiff bringing a discriminatory failure to promote claim must allege sufficient facts from which the court may infer that she was qualified for the promotion at issue. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994). HII argues that the Amended Complaint should be dismissed because Tennessee has "pled nothing plausibly suggesting" that she was qualified for the On-Site Operations Lead position. (Mem. L. Supp. Defs.' Mot. Dismiss Am. Compl. ["Mot."] at 12, ECF No. 22-1). The Court agrees with HII.

Although a plaintiff need not plead facts that constitute a prima facie case to survive a motion to dismiss, the factual allegations that she does plead must "state a plausible claim for relief under Title VII." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (citing Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)). A plaintiff's conclusory statements about her qualifications are insufficient to sustain a plausible failure-to-promote claim. See McCaskey v. Henry, No. 3:10-CV-390-GCM, 2012 WL 1118851, at *3 (W.D.N.C. Apr. 3, 2012) (dismissing failure-to-promote claim where plaintiff only alleged conclusory statements that "she possessed the 'experience, qualifications and readiness to be promoted'" and "had enough experience, knowledge, qualifications, and characteristics to be promoted"); see also Obah v. Bronxworks, No. 25-CV-1550 (LJL), 2026 WL 2098155, at *4 (S.D.N.Y. July 21, 2026) (finding that the plaintiff's allegations that he "was qualified for the . . . positions . . . because of his 'education, professional training, and prior experience

performing the same kind of work'" were "sparse" and "[did] not result in the plausible inference that he was, in fact, qualified").

Rather, the pleading standard requires the plaintiff to allege facts that "give rise to a reasonable inference of [unlawful] discrimination," McCleary-Evans, 780 F.3d at 584 (citation modified), including facts from which the Court may ascertain whether the plaintiff was qualified for the position in question in the first place, see Tran v. Becerra, No. PX-23-495, 2024 WL 4237304, at *4 (D.Md. Sep. 19, 2024). These could include facts about what—if any—qualifications are required for the promotion, responsibilities that accompany the promotion, and facts as to the plaintiff's "skills, education, or experience" that make her competitive for the promotion. Id. (dismissing failure-to-promote claim because the amended complaint offered "no detail about job requirements or responsibilities; or how [the plaintiff] possessed the skills, education, or experience to compete for the" position in question). Indeed, facts as to qualifications are "an important component of [a] failure to promote" claim, McCaskey, 2012 WL 1118851, at *3, because they aid the court in discerning whether the non-promotion of an otherwise qualified candidate gives rise to an inference of unlawful discrimination.

Tennessee's assertions regarding her qualifications are insufficient to state a failure-to-promote claim because she does not provide any facts supporting her otherwise conclusory statements that she "was qualified" for the Site Lead position and "met all of the requirements for the" On-Site Operations Lead position. (See Am. Compl. ¶¶ 8, 19). To begin with, neither Tennessee's original Complaint, (see generally Compl., ECF No. 1), nor her Amended Complaint provide any information regarding the necessary

qualifications or requirements for the promotion to the On-Site Operations Lead position, (see generally Am. Compl.). Furthermore, even after HII attached the required and preferred qualifications and job descriptions for both the positions at issue as exhibits to its Motion, (see generally Site Lead Position Description; On-Site Operations Lead Position Description), Tennessee does not allege any information regarding her educational qualifications, whether she possessed ten "years of senior level leadership" experience "managing large organizations," (On-Site Operations Lead Position Description at 3), or whether she possessed other required skills from which this Court may infer that she was qualified for the promotion in question, (see generally Am. Compl.). Finally, although Tennessee does allege that she did not possess "prior military experience," (id. ¶ 13), which the requisition lists as a "preferred" qualification, (see On-Site Operations Lead Position Description at 3), her Amended Complaint is silent as to where she stands with respect to other "preferred" qualifications, (see generally Am. Compl.). Accordingly, the Court concludes that Tennessee has failed to plausibly allege that she was qualified for the On-Site Operations Lead position and thus fails to state a claim under Title VII as to Counts I and II.[9]

## III. CONCLUSION

For the foregoing reasons, the Court will grant HII's Motion to Dismiss (ECF No. 22). A separate Order follows.

---

[9] Because Tennessee has failed to adequately plead facts as to her qualifications for the promotion at issue—an essential element of her prima facie case under McDonnell Douglas—the Court declines to opine on the adequacy of her pleadings as to the remaining elements of her prima facie case.

Entered this 24th day of November, 2026.

/s/
George L. Russell, III
Chief United States District Judge